Citation Nr: 1536771 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 08-19 906 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to service connection for skin cancer, to include as due to herbicide exposure.


ATTORNEY FOR THE BOARD

R. Connally, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had service from January 1967 to December 1968.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a March 2006 decision of the Regional Office (RO) in Atlanta, Georgia.

The Board previously considered this appeal in March 2012 and January 2015, and remanded this issue for further development. That development is now completed, and the case has returned to the Board for further appellate review.

The Veteran's claims file indicates that he is represented by himself as of December 2011. However, subsequent correspondence shows that the Georgia Department of Veterans Services represented him. As a result, a clarification letter was sent to the Veteran on June 19, 2015, giving him 30 days to respond with his choice of representation, and that no response would indicate he wished to represent himself. The Veteran did not timely respond. Therefore, the Board finds that the Veteran's pro se election will continue.


FINDING OF FACT

Skin cancer was not manifest during service or within one year of separation therefrom, and is not a result of herbicide exposure.


CONCLUSION OF LAW

The criteria to establish service connection for skin cancer have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

As an initial matter, the Board acknowledges the Veteran's service to his country and is sympathetic to his medical conditions; however, the Board must apply the law as it exists. See Owings v. Brown, 8 Vet. App. 17, 23 (1995) (providing that the Board must apply the law as it exists and is not permitted to award benefits based on sympathy for a particular appellant).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2014). The Court has held that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail. See Gilbert, 1 Vet. App. at 53. The Court has also stated, "It is clear that to deny a claim on its merits, the evidence must preponderate against the claim." Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert.


Service Connection for Skin Cancer

The Veteran contends that his skin cancer (basal cell carcinoma) is a result of service, to include herbicide exposure from serving in the Vietnam War.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2014). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Generally, lay evidence is competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007). Lay evidence can be competent and sufficient evidence of a diagnosis if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Additionally, a lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. Id.

However, a lay person is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever). See 38 C.F.R. § 3.159(a)(2).

Additionally, if a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service-connected even though there is no record of such disease during service. 38 C.F.R. § 3.309(e). Some of the diseases listed at 38 C.F.R. § 3.309(e), shall have become manifest to a degree of 10 percent or more at any time after service. 38 C.F.R. § 3.307(a)(6)(ii).

The Veteran asserts that he had visible skin defects upon returning from service in December 1968, and that this account of his visible symptomatology is corroborated by his sister who witnessed a rash on his body, and that there is also some evidence of continuity of symptomatology. 

Service treatment records do not contain evidence of skin cancer treatment. VA medical records also do not contain treatment for basal cell carcinoma within one year of service. Additionally, the Board notes that this condition is not listed within the presumptions of herbicide agent exposure listed in 38 C.F.R. § 3.309. Nevertheless, service connection can still be established by medical evidence showing a link between any currently diagnosed skin cancer, and/or skin cancer residuals, and his active service, including his exposure to herbicides. 

The Veteran's service record reflects service in Vietnam during the Vietnam Era, so he is presumed to have been exposed to herbicides. 38 C.F.R. § 3.307(a). Furthermore, private records show that the Veteran was diagnosed with basal cell carcinoma in September 2004. The Veteran's private physician, Dr. W., opined in August 2004 that it is "feasible" the Veteran's skin lesions "are due to agent orange," but that he is also "not an expert concerning the association of skin lesions with Agent Orange exposure." The Board finds that this opinion is too speculative to substantiate the Veteran's claim for service connection. Sklar v. Brown, 5 Vet. App. 104, 145-46 (1993). 

A VA dermatology consultation and biopsy report in February 2005 found that the Veteran had plaques on the lower left back that were positive for basal cell carcinoma; plaques on the left shoulder that were suspicious for amelanotic melanoma; open comedones around the eyes determined to be favre rocouchot; erythematous macules with overlying crust determined to be actinic keratosis; and a papule on the left eyebrow determined to be seborrheic keratosis. He was assessed with having Bowen's disease versus superficial basal cell carcinoma versus amelanotic melanoma on the shoulder. The plan was to schedule the Veteran for an excisional biopsy. However, the Veteran subsequently indicated that he would have to think about whether he desired to have the lesions excised and that he would perhaps follow up with a private dermatologist or an oncologist. The Board notes that no subsequent medical records have been associated with claims file with respect to this issue.

Accordingly, the Veteran was afforded a VA examination in February 2010. The examiner noted that the Veteran had multiple skin lesions that appeared to be related to the aging process. The examiner opined that there was no evidence of any skin lesion that appeared to be pre-malignant or any skin lesions that were related to Vietnam. The examiner did not, however, provide an opinion as to whether the Veteran's previously diagnosed skin cancer, or any skin cancer residuals, had any relation to his active service. Additionally, there was no rationale for the opinion.

Subsequently, VA sent the Veteran notice that other private medical records from Dr. W. and other private treatment records were still needed. The Veteran responded accordingly that VA is already in possession of all pertinent treatment records from Dr. W. The Board notes that there is no other evidence in the record tending to show a link between the Veteran's current diagnosed conditions and his service. 

On VA examination in December 2012, the Veteran received a diagnosis of liver spots, seborrheic keratosis with erythema, actinic keratosis, acrochordons, and a residual scar, status post basal cell carcinoma skin lesion of the left lower back. There were no benign or malignant skin neoplasms or systemic manifestations due to any skin diseases. The examiner opined that the Veteran's diagnosed skin conditions were less likely as not related to military service, to include disease, event, injury or herbicidal exposures. The examiner reasoned that none of the Veteran's diagnosed skin conditions were corroborated as having occurred during military service to include disease, event, injury or herbicidal exposures. 

The Veteran received another VA examination in March 2015. The Veteran reported no recurrence of the basal cell carcinoma on his left lower back that was previously removed in September 2004, but he did mention the presence of a sore on his right earlobe. The examiner found that the Veteran has a malignant neoplasm, but that treatment was completed and he is "currently in watchful waiting status." There were no other pertinent physical findings, complications, conditions, signs and/or symptoms related to this condition. The examiner instructed the Veteran to seek immediate medical evaluation and treatment for right earlobe lesion that was "suspicious for malignancy."

An addendum VA examination opinion was also given in March 2015 to specifically determine whether the Veteran's basal cell carcinoma was directly related to service. The examiner opined that based on review of the Veteran's claims folder, physical examination, consideration of the Veteran's and his sister's statements, and no record of treatment for basal cell carcinoma during active duty, it is less likely than not that basal cell carcinoma was incurred in or caused by the claimed in-service injury, event, or illness. Specifically, the examiner afforded "low weight" to Dr. W's August 2004 private medical opinion regarding a feasible relationship between basal cell carcinoma and herbicide exposure "because the medical literature is against a relationship. Based on reference, www.publichealth .va.gov/exposures/agent orange, basal cell carcinoma is not recognized as being associated with herbicide exposure. The etiology of basal cell carcinoma is due to sun exposure, specifically UV rays occurring in certain individuals predisposed to developing skin cancer. Therefore it is less likely than not that the basal cell carcinoma was caused by exposure to herbicides during military service." 

The Board finds this medical opinion highly probative of a negative nexus to service because it not only contains a clear conclusion with supporting data, but also a reasoned medical explanation connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008). Also, the opinion did not merely rest on the fact that skin cancer is not presumptively linked to Agent Orange exposure. Polovick v. Shinseki, 23 Vet. App. 48, 55 (2009). Rather, the examiner supported the opinion by identifying that the etiology of skin cancer is sun exposure.

The Board has considered the Veteran's statements of record that service connection is warranted for his skin cancer. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert, 1 Vet. App. at 57. Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

The Veteran and his sister are competent to report symptomatology relating to his skin cancer because this requires only personal knowledge as it comes to them through their senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). They are not, however, competent to provide an etiology for his skin cancer. The Board finds that the question of the etiology of his skin cancer is medically complex in nature. To the extent that the Veteran alleges a nexus to service, the Board finds that the probative value of his allegations is outweighed by the aforementioned examiners' findings. Competent evidence concerning the nature and extent of the Veteran's disability has been provided by the VA examiners during the current appeal and provided relevant medical findings and opinions in conjunction with the examinations. In this regard, the medical findings and opinions (as provided in the examination reports) directly address the nexus element for service connection.

After a full review of the record, the Board finds that the weight of the evidence demonstrates that skin cancer did not have its onset in service, was not manifest to a compensable degree within one year of separation from service, and is not related to service for the reasons discussed above. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

VCAA notice should be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The RO provided a letter to the Veteran in May 2005, prior to the initial adjudication of the service connection claim on appeal, and then again in March 2012 after the Board's first remand. The letter notified the Veteran of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

The notice requirements of the VCAA apply to all elements of a service connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. The Veteran was provided with such notice by the May 2005 and March 2012 letters, including the type of evidence necessary to establish a disability rating and effective dates.

Next, VA has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim"). Here, service records have been obtained as have records of VA treatment. Based on the foregoing, the Board finds that VA has met its duty to assist with regard to records development.

The Veteran was afforded VA examinations with respect to his claim in February 2010, December 2012, and March 2015. During the examinations, the VA examiners conducted a physical examination of the Veteran with diagnostic testing, were provided the claims file for review, took down the Veteran's history, considered the lay evidence presented, laid a factual foundation for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met regarding the matters of service connection for skin cancer. 38 C.F.R. § 3.159(c)(4); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion).

All necessary development has been accomplished; therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). In addition to the evidence discussed above, the Veteran's statements in support of the claim are also of record. The Board has carefully considered such statements, and concludes that no available outstanding evidence has been identified. Additionally, the Board has reviewed the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim. For these reasons, the Board finds that the duties to notify and assist the Veteran in the development of this claim have been met, so that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

As noted in the Introduction, the Board previously remanded this claim in January 2015. The Board instructed the AOJ to readjudicate the claim on appeal with consideration of the additional evidence associated with the claims folder. Since that time, VA issued a supplemental statement of the case that considered the additional, new evidence. As a result, the Board finds substantial compliance with its previous remand instructions, and has properly continued with the foregoing decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).


ORDER

Entitlement to service connection for skin cancer, to include as due to herbicide exposure is denied.



____________________________________________
MICHELLE KANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs